AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Western District of New York

| | |
|---|---|
| United States of America<br>v.<br><br>WESLEY MCGILL<br><br>_____<br>_Defendant(s)_ | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 24-MJ-609

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _September 24, 2024_ in the county of _Chemung_ in the _Western_ District of _New York_, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Sections 841(a)(1) and (b)(1)(A) | Possession with intent to distribute, and to distribute, 400 grams or more or a mixture and substance containing fentanyl |
| 21 U.S.C. Sections 841(a)(1) and (b)(1)(C) | Possession with intent to distribute, and to distribute, 400 grams or more or a mixture and substance containing fentanyl |
| 18 U.S.C. Section 924(c)(1)(A)(i) | Possession of a firearm in furtherance of a drug trafficking crime |

This criminal complaint is based on these facts:

See the attached affidavit of U.S. Postal Inspector James Pierce.

☑ Continued on the attached sheet.

_____
_Complainant's signature_

James Pierce, U.S. Postal Inspector
_Printed name and title_

Affidavit and Complaint submitted electronically by email in .pdf format. Oath administered, and contents and signature, attested to me as true and accurate telephonically pursuant to Fed. R. Crim. P. 4.1 and 4(d) on:

Date: _October 21, 2024_

_____
_Judge's signature_

City and state: _Rochester, New York_

Hon. Mark W. Pedersen, U.S. Magistrate Judge
_Printed name and title_

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT**

STATE OF NEW YORK     )
COUNTY OF MONROE     ) SS:
CITY OF ROCHESTER     )

Your Affiant, James G. Pierce, United States Postal Inspector, being duly sworn, hereby

deposes and states:

1.      I am a United States Postal Inspector assigned to the Boston Division

(Rochester, NY Field Office) of the United States Postal Inspection Service ("Inspection

Service") and have been so employed since June 2017.  I am currently assigned to the

Rochester Miscellaneous Crimes Team which investigates violations of Federal law,

including identity theft, mail theft, bank fraud, wire fraud, mail fraud, violent crimes, and

drug trafficking.  The investigation of drug trafficking in Rochester, NY and surrounding

areas specifically targets narcotics and narcotics proceeds sent via the U.S. Mail.

2.      Your Affiant's education and training includes the following:  Upon entering the

Inspection Service, I completed twelve weeks of training in Potomac, MD.  The training

covered various aspects of federal law enforcement, including the investigation of narcotics

related offenses. I have received instruction on conducting investigations of, and have in fact

participated in investigations involving, possession with intent to distribute and distribution of

controlled dangerous substances.

3.      During my employment as a U.S. Postal Inspector, I have participated in

investigations involving the mailing of controlled substances through the U.S. mails. In

particular, I have worked on cases involving controlled substances and have read official

reports of other officers.  As a result of my experience, I am familiar with the common

1

practices utilized by drug traffickers to smuggle drugs and money using various methods including but not limited to commercial mail/parcel carriers.

5.      Based on my training and experience and the facts as set forth in this affidavit, I submit that there is probable cause to believe that Wesley MCGILL, did knowingly violate 21 U.S.C. §§ 841(a)(1), (b)(1)(A) possession with intent to distribute 400 grams or more of a mixture and substance containing fentanyl; 21 U.S.C. §§ 841(a)(1), (b)(1)(C), possession with intent to distribute methamphetamine; and 18 U.S.C. § 924(c)(1)(A)(i), possession of a firearm in furtherance of drug trafficking. Because this affidavit is being submitted for the limited purpose of securing a criminal complaint, I have not included each and every fact known to me concerning this investigation.  Rather, I have set forth only the facts I believe are necessary to establish probable cause to believe that MCGILL committed these offenses.

## PROBABLE CAUSE

6.      In the Spring of 2024, the Federal Bureau of Investigation ("FBI") began investigating the nationwide trafficking of narcotics by Telegram Vendor @getchoasssmokedonnaeast ("VENDOR") using the Telegram Channel "Ricos trap house" ("CHANNEL").

7.      Telegram is an encrypted messaging and social media platform, allowing users to chat confidentially, without risking the content of those messages being retained and/or exposed.

8.      Through multiple controlled evidence purchases, VENDOR was identified as Wesley MCGILL, a resident of Elmira, NY in the Western District of New York.   Physical surveillance, subscriber data, controlled narcotics purchases, confidential source reporting,

and an interview of MCGILL and his girlfriend, D.B.[1], all indicate that MCGILL is the owner and operator of the VENDOR and CHANNEL used to distribute narcotics nationwide.

9.      In the Summer of 2023, the FBI recruited a Confidential Human Source ("CHS") with knowledge of drug trafficking. The CHS has cooperated with the FBI on multiple, criminal investigations.  CHS's cooperation with the FBI has directly resulted in the execution of multiple search warrants, narcotics and firearm seizures, and Federal criminal indictments.  For this reason, CHS is considered trustworthy, and his/her information has proven to be accurate.

10.      In the Spring of 2024, CHS informed the FBI that VENDOR ran and operated CHANNEL on Telegram in order to sell narcotics to approximately 808 subscribers.  VENDOR posted "menus" on CHANNEL that advertised various types of narcotics for different prices.  VENDOR used the United States Postal Service ("USPS") to ship the narcotics to customers in various states across the nation.  CHS informed the FBI that he/she purchased drugs from VENDOR approximately three times in the past. VENDOR had a "touchdown[2]" page on CHANNEL, where narcotics customers shared photographs of the packages of narcotics they'd received from VENDOR, that were ordered over CHANNEL.

11.      CHS communicated with VENDOR through messages on Telegram.  From personal information shared in one-on-one conversations, CHS believed VENDOR was a male, and most likely lived in the upstate New York area.  VENDOR mentioned being in

---

[1] D.B.'s identity is known to law enforcement but is only referenced here by her initials.
[2] Touchdown pages give Vendors and Channel credibility when narcotics customers share photos of narcotics packages received from the Vendors over the Channel.

the presence of his infant child.  The following are images from CHANNEL, showing the

CHANNEL page, crystal methamphetamine and fentanyl pills for sale in various quantities,

and USPS packages - used to ship the narcotics:







4

12.     In the Spring of 2024, the FBI utilized CHS to conduct a controlled narcotics purchase of methamphetamine from VENDOR.  CHS communicated with VENDOR on Telegram and placed an order for methamphetamine, as advertised by VENDOR over CHANNEL. VENDOR shipped the methamphetamine to an address provided by CHS. Law Enforcement took possession of the package when it arrived.  The package contained approximately 35 grams of a crystal substance in a vacuum-sealed pack.  The substance was sent to the Drug Enforcement Administration ("DEA") laboratory.  Lab results showed the substance was pure methamphetamine.

13.     I reviewed USPS business records, and they revealed this package was introduced into the mail stream at the Horseheads Post Office, located at 624 Tuttle Ave, Horseheads, NY.  The return address listed on the package was Exotic Kicks and Clothing LLC at 110 Walnut St, Elmira, NY.

14.     Upon further review of USPS business records, five other packages were sent from this sender on the same day as the previously-referenced methamphetamine package that was sent in the mail to CHS.  The other packages were shipped to Brownsville, TX; Carbondale, IL; Minneapolis, MN; Columbus, OH; and Woodside, NY.  Based on my training and experience, this indicates that VENDOR was shipping other narcotics nationwide.

15.     VENDOR requested the CHS pay for the methamphetamine using a mobile application that facilitates online, peer-to-peer financial transactions.  VENDOR provided an account ("ACCOUNT") that he maintained on this financial platform and requested CHS pay for the methamphetamine by wiring money to this ACCOUNT.  Business records

provided the subscriber information for the owner of the ACCOUNT to showed that ACCOUNT belonged to Wesley George Lewis MCGILL, date of birth in 2002. The business record also provided a copy of MCGILLs New York State Learners Permit ending in 4471, and the registered address for ACCOUNT was 114 Walnut Street, Elmira, New York.

16.     CHS shared a video with law enforcement.  The video was sent to CHS by VENDOR.  The video showed multiple USPS packages.  The video was sent to CHS by VENDOR to show that CHS' narcotics package was ready for shipment.  In the video, a small child can be heard crying.  The video appears to be taken from inside a residence.  From this information, I believe this indicates VENDOR packages the narcotics in a residence, around family members.  Through physical surveillance, I know MCGILL lived at 114 Walnut St, Elmira, NY with his girlfriend and infant child.

17.     In the Summer of 2024, CHS informed law enforcement that VENDOR provided telephone number of 607-483-2739 ("NUMBER"); a telephone number that VENDOR used to meet trusted customers for in-person narcotics deals.  CHS provided your Applicant with a screenshot of VENDOR providing NUMBER in a conversation with CHS over Telegram.

18.     On June 21, 2024, a search warrant was issued in the Middle District of Pennsylvania for NUMBER.  Law enforcement began receiving and monitoring NUMBER's Global Positioning System ("GPS") information.

19.     In the Summer of 2024, law enforcement used CHS to purchase narcotics from VENDOR.  VENDOR used NUMBER to setup the exchange of narcotics for US currency.  VENDOR used NUMBER to establish a time and location for the deal.  Before

and after the controlled narcotics purchase, CHS was searched by law enforcement for the presence of narcotics, monies, and contraband, each time with negative results. All money provided to CHS was pre-recorded. Agents and Law Enforcement Officers ("LEO") maintained physical and electronic surveillance on both CHS and VENDOR before, during, and after the exchange. LEOs observed a vehicle parked in the driveway of 114 Walnut St, Elmira, NY before the narcotics deal. LEO's then watched the vehicle leave 114 Walnut St and travel to the pre-determined location where VENDOR instructed CHS to meet for the narcotics exchange which was located within the Western District of New York. VENDOR gave a description of his vehicle as a red Jeep Cherokee. LEO's observed this vehicle at the pre-determined meet location. CHS got into the Jeep, as instructed by VENDOR using NUMBER. Inside the vehicle, CHS provided VENDOR with US currency, and VENDOR gave CHS the narcotics. LEO's maintained physical surveillance on CHS as CHS met back with LEO's and relinquished the substance they'd received from VENDOR. The substance was sent to DEA's laboratory, where it tested positive for over 50 grams of a mixture and substance containing fentanyl.

20.    LEO's maintained physical surveillance on VENDOR after the exchange. Photographs were taken of VENDOR. LEOs have compared surveillance photographs taken of VENDOR to New York State images of Wesley MCGILL. Images of MCGILL match that of VENDOR, who met CHS for the exchange of fentanyl.

21.    After the narcotics purchase, LEOs observed MCGILL walk to meet a woman, identified D.B., and an infant child, inside a local business.

22.    According to New York State Department of Motor Vehicles, the red Jeep used for the narcotics exchange was registered to a Heather BESCHLER.

23.     According to law enforcement databases, DB's current address was 114 Walnut St, Elmira, NY.  According to the same law enforcement databases, MCGILL's current address is also 114 Walnut St, Elmira, NY.

24.     During the controlled narcotics purchase, LEOs monitored GPS data related to NUMBER, pursuant to the search warrant signed June 21, 2024.  GPS data showed that NUMBER utilized cellular resources that covered 114 Walnut St, Elmira, NY shortly before the controlled narcotics purchase.  Then, NUMBER traveled away from 114 Walnut St, Elmira, NY, to the area where MCGILL dealt fentanyl to CHS.  Based on my training and experience regarding GPS information for cellphones, this indicates MCGILL was in possession of a cellphone that used NUMBER at 114 Walnut St, Elmira, NY, then used and took the cellphone NUMBER to travel to meet CHS for the narcotics deal.

25.     In July of 2024, VENDOR set his/her profile image on Telegram to a photograph of two arms holding a firearm with an extended magazine.  The hands appeared to be that of a black male.  That photograph is depicted below:



26.    On August 13, 2024, LEOs conducted physical surveillance in the area of 114 Walnut St, Elmira, NY.  LEOs observed the red Jeep parked in the driveway of 114 Walnut St, Elmira, NY, depicted below:



27.    On August 19, 2024, CHS informed your Applicant that VENDOR advertised the sale of "blues" on CHANNEL.  Based on my training and experience and through LEO conversations with CHS, I understand "blues" to be M30 fentanyl pills.

28.    On September 9, 2024, VENDOR posted a menu of fentanyl pills to CHANNEL.  VENDOR indicated they were sending out ten packages "today."



29.     Also on September 9, 2024, location data for NUMBER showed MCGILL's cellphone traveled from the area of 114 Walnut St, Elmira, NY to the area of 624 Tuttle Ave, Horseheads, NY, which is the USPS location where the package of methamphetamine for CHS originated.

30.     I reviewed USPS business records and found approximately seven packages that were shipped from 624 Tuttle Ave, Horseheads, NY on September 9, 2024 with a return label for Exotic Kicks and Clothing LLC at 110 Walnut St, Elmira, NY, which is the same return address as the controlled narcotics purchase of methamphetamine by CHS as previously described in this affidavit. The seven additional packages were destined for South Carolina (2 packages), Georgia, New York, Montana, Alaska, and California.

31.     On or about September 16, 2024, I detained two of the seven packages that were shipped, based on the known facts of this case. A trained narcotics detection K-9 gave a positive alert to two packages that I detained, and I subsequently received search warrants for these two parcels.

32.     One of these parcels that I obtained a search warrant for bore USPS tracking number ending in 3430 16. This package had a return address of Exotic Kicks and Clothing LLC at 110 Walnut St, Elmira, NY 14905-2516 and was destined for Woodside, NY. Upon opening this package, it was found that it contained approximately 19 grams of M30 pills, suspected to be fentanyl. This package contained clear bubble wrap and white packing peanuts.

33.     The second parcel that I obtained a search warrant for bore USPS tracking number ending in 2080 70. This package had a return address of Exotic Kicks and Clothing LLC at 110 Walnut St, Elmira, NY 14905-2516 and was destined for Wellford, SC. Upon

opening this package, it was found that it contained approximately 58 grams of suspected Alprazolam pills and approximately 63 grams of suspected crystal methamphetamine. The suspected methamphetamine was field tested using a TruNarc, and it tested positive for the presence of methamphetamine. This package contained clear bubble wrap and white packing peanuts.

34.     On September 23, 2024, VENDOR told CHS that VENDOR was willing to sell CHS approximately 3,000 fentanyl pills the following day.

35.     On September 23, 2024, a federal search warrant was obtained for MCGILL'S residence at 114 Walnut St, Elmira, NY, and for the red Jeep.

36.     On September 24, 2024, LEOs conducted physical surveillance in the area of 114 Walnut St, Elmira, NY.  MCGILL and D.B. were observed leaving the residence and entering the red Jeep.  LEOs conducted a vehicle and traffic stop on the red Jeep.  A stolen Smith and Wesson handgun, with an extended magazine (believed to be 30 round capacity) loaded with 24 rounds of ammunition, was recovered from MCGILLs waistband. This appears to be the same pistol described and shown in paragraph 25 of this affidavit. Approximately 3,000 suspected fentanyl pills (weighing approximately 293 grams) were also located under MCGILL's seat.

37.     Upon executing the federal search warrant on the red jeep, LEO's also found and recovered over $2200 in US currency in multiple denominations and one cell phone.

38.     On September 24, 2024, LEO's also executed the federal search warrant on MCGILL'S residence. Upon concluding this search warrant, the following items were seized and/or observed inside the residence:

11

a.  Brown paper bag containing four small bags and a plastic container of a green leafy substance consistent with Marijuana weighing approximately 115 grams.

b.  Suspected green Xanax pills weighing approximately 92 grams.

c.  Suspected Blue (M-30) fentanyl pills weighing approximately 230 grams.

d.  Bag containing suspected methamphetamine weighing approximately 75 grams.

e.  Plastic bag with suspected blue (M-30) fentanyl pills weighing approximately 50 grams.

f.  Package shipping labels, large quantities of white packing peanuts and clear bubble wrap, and USPS receipts.

g.  Label maker

h.  Two purple bottles containing a liquid and eight plastic bottles of different colors containing a red liquid weighing approximately 2,895 grams.

39.    On September 24, 2024, and after MCGILL was advised of his *Miranda* rights and signed a waiver form, FBI Agent Harris and I interviewed MCGILL.  MCGILL admitted he used his cell phone to access Telegram to CHANNEL and distribute drugs to customers in various states across the U.S.  MCGILL admitted he used his cell phone to access his ACCOUNT to pay his supplier, who he believed most likely resided in California.  MCGILL told me he used his cell phone to communicate with his supplier to order and receive multiple pounds of methamphetamine and fentanyl on a regular basis.  MCGILL also uses his cell phone to connect to his parcel label printer via Bluetooth to print his prepaid USPS shipping labels.

12

40.    MCGILL stated he began selling drugs online and shipping them through the mail, in the middle of 2021. MCGILL said he ships narcotics packages almost everyday usually from the Elmira, NY Post Office or the Horseheads Post Office. MCGILL said many of the packages contained blue M-30 pills, which he knows to be fentanyl.  MCGILL said he also sells methamphetamine and Xanax in this same fashion.

41.    MCGILL was asked what would be found inside the red Jeep. MCGILL admitted that he possessed "more of the blues." "Blues" are known to me as a reference to M-30 fentanyl pills. When asked how many, McGill said "quite a bit" would be located under the seat. The pills from under the seat weighed approximately 293 grams.

42.    MCGILL was asked what the unknown red liquid was inside the bottles at his residence, and he said it was Oxycodone liquid that he purchased over Telegram. MCGILL said he uses the Oxycodone liquid and sells it as well.

43.    During the interview, I showed MCGILL four USPS packages that I detained from the Horseheads New York Post Office on September 23, 2024. These packages were destined for Jacksonville, FL, Plainville, MA, Abilene, TX, and Harrisonburg, VA. MCGILL acknowledged he mailed the above packages and said they contained M-30 fentanyl pills and/or Xanax.

44.    I asked MCGILL for written consent to open the four parcels shipped on September 23, 2024, and MCGILL gave verbal and written consent.

45.    On September 25, 2024, I opened all four parcels that MCGILL consented to and found the following:

      a.    Parcel destined for Jacksonville, FL: Approximately 15 grams of M-30 pills

    b.  Parcel destined for Plainville, MA: Approximately 12.5 grams of M-30 pills and approximately 32 grams of Xanax bars.

    c.  Parcel destined for Abilene, TX: Approximately 43 grams of M-30 pills.

    d.  Parcel destined for Harrisonburg, VA: Approximately 71.5 grams of M-30 pills.

All four of these parcels also contained clear bubble wrap and white packing peanuts like the two previously seized parcels. Similar packaging materials were also found readily available in MCGILL'S residence during the search warrant on September 24, 2024.

## CONCLUSION

46.    Based on the above information, I submit that probable cause exists to believe that on or about September 24, 2024, in the Western District of New York and elsewhere, the defendant, Wesley MCGILL, violated 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), possession with intent to distribute 400 grams or more of a mixture and substance containing fentanyl; 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), possession with intent to distribute methamphetamine; and 18 U.S.C. § 924(c)(1)(A)(i), possession of a firearm in furtherance of a drug trafficking crime.

JAMES PIERCE
U.S. Postal Inspector

Affidavit submitted electronically by email in .pdf format.
Oath Administered, and contents and signature attested to
me telephonically pursuant to Fed. R. Crim. P. 4.1 and
4(d) on October 21 , 2024.

HON. MARK W. PEDERSEN
United States Magistrate Judge

14